(138 So. 121)

## STATE ex rel. WATTS v. AVOYELLES DRAINAGE DIST. NO. 4.

### No. 30501.

Nov. 3, 1931.

Lester L. Bordelon, District Attorney, N. I. Normand, and W. K. Joffrion, all of Marksville, for appellant.

Porterie, Bordelon & Roy, of Marksville, for appellee.

O'NIELL, C. J.

The defendant, drainage district, has appealed from a judgment making a writ of mandamus peremptory and ordering the assessment and collection of an acreage tax of 20 cents per acre on the land within the drainage district, for one year, as for the year 1927, the avails of which tax are to be paid to the relator.

At an election held on the 13th of July, 1913, the property taxpayers authorized the board of commissioners of the district, first, to levy an acreage tax of 20 cents per acre on the land within the district for a period of fifteen years, for the purpose of enlarging Coulee des Grues, and for the building of dykes, and locks or levees if necessary, to carry out the purpose for which the district was created; and, second, to incur a debt and issue negotiable bonds to the amount of $35,000, to run not longer than fifteen years, and to bear interest at 5 per cent. per annum. The board advertised for bids for the bonds and for the work to be done; and on the 4th of August, 1914, accepted a bank's bid for the bonds, and, at the same time, accepted the bid of the relator, Watts, to do the proposed excavating for 17.98 cents per cubic yard, plus the lump sum of $1,250. On the same day the board adopted a resolution authorizing the president to sign the contract with Watts. Thereafter the bank withdrew its bid and declined to take the bonds; and on the 30th of August, 1914, the board met again and, on account of the bank's having withdrawn its bid, resolved to apply the avails of the tax to the payment of the

amount which would be due to Watts under his contract. The contract was signed on the 3d of September, 1914. By its terms, Watts was to be paid, every 30 days, 90 per cent. of the amount of the work done, according to estimates to be made by the board's engineer, as long as the funds in the treasury lasted, and was to be paid whatever balance might then be due him out of the 20 cents acreage tax, as collected, with interest at 8 per cent. per annum from June 1st, 1914.

The work was completed and was formally accepted by the board on the 14th of April, 1917, at a special meeting held for the purpose of making a settlement with Watts. At the meeting it was determined and acknowledged that Watts had earned $30,363.22 under his contract, and had received $9,414.10, leaving a balance of $20,949.12 due him. It was then realized and acknowledged by the board that the avails of the acreage tax, for the remaining ten years in which it was to be collected, would not pay the balance due to Watts, with interest, even at the rate of 5 per cent. The board thereupon made a compromise agreement and settlement with Watts, by which the board agreed to pay, and Watts agreed to accept in full settlement of the balance due him, the avails of the tax for the remaining years for which it was to be collected, including the year 1927. Accordingly, the tax was collected and paid over to Watts every year until and including the year 1926. The board refused to collect the tax for the year 1927, claiming that, under the resolution of the board dated the 30th of August, 1914, the amount to be paid Watts was not to exceed $35,000, including interest, and that he had already collected $37,-378.53. In answer to this suit, therefore, the board set up a demand in reconvention for the alleged overpayment of $2,378.53.

It is true that the resolution of the board, dated the 30th of August, 1914, authorizing the president to enter into the contract with Watts, contained the proviso, "provided the debt does not exceed $35,000.00 in principal and interest." But the resolution contained also the declaration that it appeared from the report of the board's engineer, dated the 4th of June, 1913, that the work to be done, at the price bid by Watts, would amount to approximately $25,523. Inasmuch as the cost of the work actually done amounted to $30,-363.22, it is evident that the extent of the work exceeded the engineer's estimate nearly 20 per cent. Aside from that consideration, the testimony in the case shows that the limitation in the resolution of the board, that the amount to be paid Watts should not exceed $35,000, including interest, was based upon the supposition and understanding that the board would carry out its part of the contract, and pay promptly. The board went beyond its authority, perhaps, in agreeing to pay Watts 8 per cent. interest, instead of 5 per cent., on the deferred payments; but that is a matter of no consequence in this case, because, if the interest were computed at 5 per cent., the avails of the tax for one more year would not be sufficient to pay the balance due Watts. The tax should have been assessed and collected in 1927. Being an acreage tax, and not an ad valorem tax, however, the amount will be the same if it be assessed and collected in the next calendar year after the decree in this case becomes final, as provided in the judgment.

The judgment is affirmed.